# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

PATRICIA PATTERSON          )
CAUSEY,                     )
                            )
    Plaintiff,              )
                            )
vs.                         )    NO. 1:07-CV-201
                            )
FORT WAYNE COMMUNITY SCHOOLS, )
et al.,                     )
                            )
    Defendants.             )


## OPINION AND ORDER


This matter is before the Court on Defendants' Motion for Summary Judgment (DE #31), filed jointly by Defendants, Fort Wayne Community Schools, Brenda Brown, Harold Stevens, and Dan Bickel, on August 31, 2008. For the reasons set forth below, the motion is **GRANTED**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's claims against Defendants. The Clerk is **FURTHER ORDERED** to close this case.


## BACKGROUND

Plaintiff, Patricia Patterson Causey ("Causey"), filed a complaint against Defendants, Fort Wayne Community Schools ("FWCS"), and against Brenda Brown ("Brown"), Harold Stevens

("Stevens"), and Dan Bickel ("Bickel"), in their individual capacities, under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging employment discrimination based on race and for unlawful retaliation, and pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging that Defendants violated her rights as protected by the Fourteenth Amendment of the United States Constitution. (Compl. ¶ 1.) Causey also brings causes of action against FWCS for age discrimination pursuant to the Age Discrimination Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, *et seq.*, and gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e, *et seq.* (*Id.*)

Defendants filed the instant Motion for Summary Judgment, arguing that Causey, an administrative assistant for FWCS, was ultimately terminated because she attempted to undermine the authority of Stevens, her supervisor, and because of her poor demeanor with parents and students. Additionally, Defendants claim that Causey was suspended, and subsequently chose to retire, rather than be terminated by FWCS. Defendants claim Causey has no admissible evidence to support her belief that she was unlawfully terminated.

## DISCUSSION

### Summary Judgment

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill*

*Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court recognizes that "summary judgment is frequently inappropriate in discrimination cases because intent, and therefore credibility, is often a crucial issue." *McMillian v. Svetanoff*,

878 F.2d 186, 188 (7th Cir. 1989).  While the Court approaches the question of summary judgment with "special caution" in discrimination cases, "if a plaintiff in a discrimination case is unable to present any evidence to create a genuine issue as to whether the defendant's articulated reason for the firing is the real reason, then summary judgment will be appropriate."  *Id.* at 188-89; *see also Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988).

Both Plaintiff and Defendants have set forth independent statements of undisputed material facts, and Plaintiff has set forth a statement of genuine issues.  Defendants have not responded to Plaintiff's statement of genuine issues.  The undisputed facts are set forth below, and the Court will attempt to note other relevant facts that the parties do dispute.

Causey, an African-American female, was employed with FWCS as an administrative assistant.  She began working at Miami Middle School ("Miami") in 1998.  In 1999, Causey received a written reprimand and a written verbal warning from Thomas Smith ("Smith"), the principal of Miami at that time; Smith is African American. The written reprimand states, in part, "[Causey] has been warned a number of times not to advise students and parents to call outside of our building to resolve problems within our building.  This is a violation of repeated warnings and insubordination." (DE #35-8 at 2-3, Exhibit 3.)  Approximately two years later, the personnel

evaluation form filled out by Smith states that, "[Causey] has had an excellent year. She is a hard worker. I'm glad to have her at Miami." (DE # 35-10 at 11, Exhibit 24.) After Smith left Miami, Janice Craig ("Craig") took over as principal. The parties agree that Causey and Craig were friends, although they dispute the extent and degree of that friendship. Causey received several positive performance evaluations from Craig. At the beginning of the 2005-2006 school year, Craig passed away. Margaret Katter ("Katter") took over as interim principal for a few months before Stevens was hired as the permanent replacement in November of 2005. Bickel, the Area Administrator for FWCS, believed that the school was experiencing significant problems with fights and gang activity, and he tasked Stevens with bringing order to Miami.

Sometime in the Spring of 2006, Bickel began receiving complaints from parents. The administrative logs of those complaints state that several of the parents indicated Causey had called them and provided them with information regarding conflicts between their children and Stevens. Because it appeared that Causey was urging parents to complain about Stevens, Bickel called a meeting between himself, Stevens, and Causey to discuss the issues. The meeting took place in late April of 2006. Causey denied all of the allegations against her pertaining to the parents' complaints. Bickel ultimately recommended that Brown, a manager in the human resources department, conduct an investigation

of the situation.[1] Brown reviewed the logs of the parent complaints and a memorandum from Stevens. As a result, Brown believed there was credible evidence that Causey was attempting to undermine Stevens' authority at Miami. On or about April 27, 2006, Causey was informed that she was suspended during the pendency of the investigation.

Brown conducted the investigation, and she interviewed the staff at Miami. The parents who had logged complaints about Stevens with Bickel's office were also interviewed by Brown's assistant.

While Brown was conducting her investigation, Causey filed a discrimination and retaliation complaint against FWCS with the NAACP. The FWCS Grille Administration Center received a hand-delivered letter from the NAACP on May 2, 2006, describing Causey's allegations and requesting a meeting to discuss the particulars of her claim. The parties disagree over the dates on which Stevens, Bickel, and Brown received individual copies of the letter.[2] On

_____

[1] The parties disagree about the initiation of that investigation. Defendants claim that Bickel initiated the investigation based on the calls he received to his office, and Plaintiff claims that, according to a letter written by William Sweet, general counsel of FWCS, to the NAACP, the investigation was initiated as a result of a written complaint from Stevens to Bickel. (DE #35-10 at 4, Exhibit 22.) In any event, the question of who launched the investigation is not material to the dispute at hand.

[2] In her deposition, Brown claims that she did not read the letter until sometime after May 11, 2006. (DE #31-10 at 2-3, Brown Depo. p. 75-76.) Plaintiff alleges that Stevens and Brown must have received copies of the letter by May 3rd or 4th because, during his deposition, Stevens admitted that the FWCS Grille Center usually distributed mail to its employees within 24 to 48 hours. (DE #35-6 at 11, Stevens Depo. p. 50.)

May 8, 2006, William Sweet ("Sweet"), general counsel to FWCS, responded in writing to the complaint and asked that the NAACP contact him or his assistant to facilitate setting up the requested meeting. The NAACP never contacted Sweet, and such meeting never took place.

At the completion of Brown's investigation, she and Stevens met with Causey on May 11, 2006. Brown confronted Causey with the evidence she had compiled and asked her questions regarding the same. Causey was given a chance to tell her side of the story, and she denied the allegations against her. Brown determined that, based on the information uncovered during the investigation, there was substantial evidence that Causey had been working to undermine Stevens' authority.[3] Near the end of the meeting, Brown ascertained that Causey had sufficient age and service to qualify for retirement. She explained to Causey that if she chose to retire, her employment file would not show any negative information. After taking a day to discuss her options with her friends and family, Causey ultimately chose to retire. However, the parties disagree as to whether Brown informed Causey during the meeting that she was going to *recommend* her for termination or whether she stated that she was going to terminate her if she did

---

[3] Plaintiff's Statement of Genuine Issues states that Causey was never given an opportunity to share her side of the story <u>prior</u> to Defendants' decision to terminate her. (DE #35-2 at 2-3, ¶ 4.) However, it is undisputed that, she did share her side of the story with Brown during the May 11, 2006, meeting, and that, at some point, Brown determined the evidence against Causey was substantial.

not choose to retire.[4]  The parties also disagree as to whether the employment decision was made before or after Causey had an opportunity to respond to the allegations against her during the May 11, 2006, meeting; although, as noted above, it is undisputed that Causey did have a chance to tell her side of the story during the meeting.

Following Causey's retirement, Robbiel Moore, a black male in his mid-twenties, took over Causey's position, followed by Alex Pressley, a black male in his mid-thirties.


Discrimination Based on Race, Gender and/or Age

Causey alleges race and gender discrimination in violation of Title VII and age discrimination in violation of the ADEA.[5]  Title VII provides that it is unlawful for an employer to "discharge any

---

[4] Plaintiff's Statement of Genuine Issues states, "According to Ms. Causey's testimony, Ms. Brown told her that she was going to terminate her unless she chose to retire (not recommend termination) ... Ms. Brown also testified that she made the decision to terminate Ms. Causey."  (DE #35-2 at 2, ¶ 3.)  However, the Court notes that Causey's own deposition testimony referenced above is inconsistent.  First, Causey states, "Because Brenda had said, 'Well, I'm going to terminate you, but since Brenda says that you've got eighteen (18) years and you're over fifty (50), you can either retire or you can resign.'" (DE #35-4 at 7, Causey Depo. p. 65.)  Then, several sentences later, Causey states, "[Brown] said, 'Well, I'm going to *recommend* that you be terminated or you could take one or the other.'" (DE #35-4 at 7, Causey Depo. p.66) (emphasis added).

[5] The same analytical framework is applied to employment discrimination cases whether they are brought under the ADEA or Title VII.  *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114, n. 3 (7th Cir. 2009).  Causey also alleges discrimination under 42 U.S.C. § 1981 and 42 U.S.C. § 1983.  As Defendants correctly point out, the standard for analyzing these claims is the same as the standard for analyzing Title VII claims.  *See Lalvani v. Cook County, Ill.*, 269 F.3d 785, 788-89 (7th Cir. 2001); *see also Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 751 n.2 ("The only difference between a claim under Title VII and a claim under § 1983 is who can be named as a defendant in the action.")

individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Likewise, the ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of the employee's age. 29 U.S.C. § 623(a)(1). An employee must be at least 40 years of age to pursue an age discrimination claim. 29 U.S.C. § 631(a). "In a Title VII or age discrimination case, a plaintiff may show discrimination under either the 'direct' or 'indirect' *methods* of proof." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (citation omitted) (emphasis original).

Causey's brief does not clearly articulate whether she wishes to proceed under the direct method or the indirect method in attempting to prove discrimination. She makes mention of both methods described in her brief by stating, "Ms. Causey has established *prima facie* cases of race, sex and age discrimination through circumstantial evidence *and* under the *McDonnell-Douglas* burden-shifting analysis typically applied in discharge cases." (DE #35 p. 4) (emphasis added). However, she only presents arguments under the indirect method of proof when discussing these claims, and, as such, the Court will address her arguments using

the *McDonnell Douglas* framework.[6] In doing so, the Court will keep in mind that, "[a]fter all the tools are used, the question is whether the employer would have taken the same action had it not been for the protected characteristic of the employee." *Sattar v. Motorola, Inc.,* 138 F.3d 1164, 1169 (7th Cir. 1998) (citations omitted).

The test for proving discrimination using the indirect method was first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973). A plaintiff may create a presumption of discrimination by establishing a *prima facie* case of discrimination. *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008). A *prima facie* case under Title VII or the ADEA can be shown by demonstrating that: (1) the plaintiff is a member of a protected class, (2) her job performance met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff. *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 750-751 (7th

---

[6] Even if the Court were to assume that Causey wishes to proceed under the direct method of proof, the proffered circumstantial evidence is exactly the same as that which she offers under the indirect method: her job performance and allegations that the reasons for her termination were pretextual. This evidence will be discussed using the indirect method. Furthermore, the Court notes that Causey does not present a convincing mosaic of evidence, nor any evidence that points directly to discrimination based on her race, sex, or age. Her claims would be denied under the direct method as well.

Cir. 2006). If a plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination is created, and the burden of production shifts to the defendant to present evidence of a legitimate, non-discriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802; *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 919 (7th Cir. 2001). If the defendant can produce such a legitimate, non-discriminatory reason, the burden then shifts back to the plaintiff to present evidence that the defendant's proffered reason was pretextual. *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008). Here, it is undisputed that Causey is a member of several protected classes as she is an African-American female over the age of 40; however, the parties disagree as to the remaining elements of the *prima facie* case.


Performance in Accordance with Employer's Legitimate Expectations

In setting out her *prima facie* case in her Response in Opposition to Defendants' Motion for Summary Judgment, Causey argues that her performance was good at the time her employment was terminated, and, thus, she was meeting her employer's legitimate employment expectations. Defendants, on the other hand, argue that Causey has failed to show that she was performing up to FWCS's legitimate business expectations. They state that substantial evidence was uncovered during the investigation that showed Causey was working to undermine Stevens' authority and that Causey has not

presented evidence to the contrary; therefore, they assert, Causey is not able to establish a *prima facie* case of discrimination and her claims must fail.

Causey urges the Court to eschew the traditional application of *McDonnell Douglas* at this point in order to focus on the issue of pretext. Causey asserts that because the issue of her job performance dovetails with the issue of pretext, analysis of the issue is more appropriate at the pretext stage. Causey is correct in noting that "in many employment discrimination cases, the second element of the prima facie case, satisfactory job performance, and the issue of pretext focus on the same circumstances because the employer maintains that the discharge was based on its reasonable belief that the employee was not performing in an acceptable manner." *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir. 1996). "As is also often the case, there is a great deal of overlap with respect to the factual inquiry relevant under these two prongs." *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998). The Court agrees that there is some overlap.

However, the Seventh Circuit has clarified that the approach of eschewing the *prima facie* analysis and proceeding directly to the issue of pretext is disfavored. "This court has repeatedly stated that we disfavor such an approach. The *prima facie* case is the condition precedent to the pretext analysis and should not be

bypassed." *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 273 (7th Cir. 2004) (internal citations and quotation omitted). "While it might be tempting to take the 'sensible' shortcut by jettisoning the *prima facie* analysis altogether and moving directly to the pretext inquiry, this circuit does not endorse such a practice. We have consistently held that 'the prima facie case under McDonnell Douglas must be established and not merely incanted.'" *Peele v. Country Mutual Insurance Co.*, 288 F.3d 319, 327 (7th Cir. 2002) (quoting *Coco v. Elmwood*, 128 F.3d 1177, 1178 (7th Cir. 1997)).

A narrow exception has been carved out by several of the cases which Causey cites as authority for moving directly to the pretext analysis. *See Curry v. Menard, Inc.*, 270 F.3d 473, 478 (7th Cir. 2001); *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999). In such cases:

> When a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner (i.e., applied expectations to similarly situated ... younger employees in a more favorable manner), the second and fourth prongs merge-allowing the plaintiff to stave off summary judgment for the time being, and proceed to the pretext inquiry.

*Cerutti v. BASF Corp.*, 349 F.3d 1055, 1064, n. 8 (7th Cir. 2003) *(quoting Peele*, 288 F.3d at 329); *see also McNair v. Bonaventura*, 46 Fed.Appx. 849, 852 (7th Cir. 2002) (unpublished) ("Both *Curry* and *Flores* excuse plaintiffs from showing that they met their

employer's expectations in one type of situation--namely, when a plaintiff alleges that other employees were also not meeting the employer's expectations but the employer selectively punished the plaintiff, or punished the plaintiff more severely, for discriminatory reasons.") In order to proceed directly to the pretext inquiry, a plaintiff needs to raise the inference of discriminatory expectations through some evidence. *See Pantoja v. American NTN Bearing Manufacturing Corp.*, 495 F.3d 840, 846 (7th Cir. 2007). The plaintiff, therefore, might try to show that the defendant had two different sets of employment expectations, one for the protected class and the other for the non-protected class. *Id.* Here, it is not alleged that Defendants' employment expectations were applied in a disparate manner, so the exception does not apply.

In a recent Seventh Circuit case, the court noted that "if the plaintiffs argue they have performed satisfactorily and the employer is lying *about the business expectation* . . . the second prong and the pretext question seemingly merge because the issue is the same-whether the employer is lying." *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 823 (7th Cir. 2006) (emphasis added) (*citing Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997) ("The defendant's expectations are not legitimate if they are phony; so if they are argued to be phony, the issue of legitimate expectations and the issue of pretext seem to merge.")).

Here, however, there is not a dispute as to Defendants' legitimate business expectations. Causey acknowledged during her deposition that if there is evidence an employee of FWCS is attempting to undermine the principal's authority, it would be appropriate to discipline the employee. (DE #31-8, p. 22, Causey Depo.) Common sense dictates that refraining from undermining the authority of a school principal, especially one tasked with bringing order to a school riddled with gang problems, is a legitimate business expectation. In fact, it is not disputed that insubordination is a terminable offense. While Causey denies that she was attempting to undermine Stevens' authority, a denial which we must accept as true during this particular step of the analysis, the fact remains that the *expectation* of refraining from insubordination is a legitimate one, and it is therefore appropriate to briefly address this issue at the *prima facie* stage.

Defendants point to several pieces of evidence to show that Causey was not meeting their legitimate employment expectations. This evidence includes documented phone calls from parents attributing inappropriate action to Causey, past performance evaluations documenting the similar insubordinate conduct of Causey, and notes from FWCS staff interviews regarding Causey's behavior and work practices. Instead of specifically addressing the evidence that Defendants have presented, Causey simply denies

16

all allegations and avers that she was performing her job well.

The Court agrees with Causey that her denials and self-serving statements are enough to stave off summary judgment at the *prima facie* stage of the analysis. *See Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 923, n. 6 (7th Cir. 1988) ("A determination that an individual is performing a job well enough to meet an employer's legitimate expectations, when made in the context of a prima facie case, may be based solely upon the employee's testimony concerning the quality of his work.") However, such self-serving statements, without more, are insufficient to raise a genuine issue of material fact in the context of pretext. *Id.* at 924. Thus, the Court will address Defendants' proffered evidence in the pretext section and notes that, based on her own testimony, Causey has met her minimal burden of showing that she was performing in accordance with her employer's legitimate business expectations at this stage of the analysis.


Adverse Employment Action

In her Response in Opposition to Defendants' Motion for Summary Judgment, Causey argues that she suffered an adverse employment action when she was constructively discharged on May 11, 2006, and was replaced by a substantially younger male employee. Before delving into the analysis of constructive discharge, the

Court notes that Causey fails to assert that her suspension on or around April 27, 2006, pending the results of the investigation conducted by Brown, was an adverse employment action. Despite the fact that Defendants specifically raise the issue of the suspension in their Motion for Summary Judgment, she has not responded directly to it. The Court will not advance this argument for her. *See Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995).[7] As such, this analysis will proceed on the issue surrounding the May 11, 2006, employment action only.

In regard to Causey's claims that she was constructively discharged on May 11, 2006, Defendants argue that Causey voluntarily chose to retire rather than utilizing the grievance procedure or other due process measures available to her and, therefore, she cannot claim constructive discharge. Causey responds by asserting that she need not have taken full advantage of Defendants' grievance procedure to establish that she was constructively discharged.

_____

[7] Furthermore, even had she argued such a proposition, the Court notes that she has not identified any similarly situated employee who was not suspended after reports of insubordinate activity surfaced, so her *prima facie* case regarding the suspension would fail. A similarly situated employee must be "directly comparable to [plaintiff] in all material respects." *Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008). To succeed with regard to her discrimination claims in terms of the suspension, Causey would have to show that she and another employee "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Bragg v. Potter*, 92 Fed.Appx. 342, 345 (7th Cir. 2004) (*citing Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)). Causey has not done so, and summary judgment is granted as to those claims related to her suspension.

Constructive discharge constitutes an adverse employment action in two specific scenarios. The first occurs when an employee shows that she was forced to resign because her working conditions had become unbearable. *See EEOC v. Univ. of Chicago Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002). The second form of constructive discharge occurs "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee [instead] resigns." *Id*. at 332. In other words, constructive discharge also occurs where, based on an employer's actions, "the handwriting was on the wall and the axe was about to fall." *Id*. (citation omitted). Causey argues that the second form of constructive discharge took place in this case. Defendants, however, argue that because her termination was not complete before she voluntarily chose to retire, Causey cannot claim constructive discharge. Indeed, the Seventh Circuit has specifically cautioned against relying on the language quoted above as if it were statutory text:

> Language such as this shows the danger of treating an opinion's exposition as if it were statutory text. This sentence generalizes from a situation that met the normal standard: an employee arrived at work only to find that her office had been turned into a storage area, her belongings had been packed up, and her services were no longer wanted. We held that failure to sit in the corridor while waiting for someone to say "you have been fired" did not preclude an employment-discrimination suit.

19

*Cigan v. Chippewa Falls School Dist.*, 388 F.3d 331, 333 (7th Cir. 2004). The Court in *Cigan* went on to explain that notice of intent to commence a discharge process is distinguishable from a completed discharge because treating them the same would require the courts to engage in speculation. *Id*. "The only way to know how matters will turn out is to let the process run its course. Litigation to determine what *would* have happened, had the employee contested the recommendation, is a poor substitute for the actual results of real deliberation within the employer's hierarchy." *Id*. at 333-34. The court concluded that the "prospect of being fired at the conclusion of an extended process is not itself a constructive discharge." *Id*. at 334. *See also Metelli v. Indiana Univ. South Bend*, 2006 WL 516790, *4 (N.D.Ind. March 1, 2006).

Here, Brown has submitted an affidavit that she, personally, did not have the authority to terminate an employee but rather only had the authority to recommend termination on behalf of the human resources department. (DE #31-5, p. 2, Brown Aff.) The FWCS Classified Employee Policy Booklet that all non-union classified employees of FWCS receive supports this assertion. The section pertaining to discharge notification states that "[e]mployment may be terminated *by the Board of School Trustees* at any time for good and just cause." (*Id*. & DE #31-6, p. 1) (emphasis added). The next section of the Booklet outlines a grievance procedure describing the manner in which an employee can ultimately bring an

alleged violation before the Board of School Trustees. (*Id*. at pp. 1-2.) Causey has presented no evidence to suggest that the policy described above is incorrect or that it did not apply during her tenure at FWCS; she simply states that she was unaware of the policy.

However, Defendants' argument, while valid, misses the mark at this particular stage in the litigation. While uncontested evidence indicates that Brown may not have had the actual authority to terminate Causey, Causey asserts that, on May 11, 2006, Brown specifically told her she was going to be terminated if she did not resign, and she points to deposition testimony to support this proposition. Indeed, the testimony from Brown, Stevens, and even Causey herself is inconsistent. For example, Brown replies in the affirmative at one point during her deposition in direct response to the question of whether she made the decision to terminate Causey. (DE #35-5, p. 5, Brown Depo.) However, she clarifies shortly thereafter that she was not responsible for the actual termination but rather that she was only recommending Causey for termination following the May 11, 2006, meeting. (*Id*. at 6.) During Stevens' deposition, he repeatedly makes reference to Brown's decision to terminate Causey. (*See e.g.* DE #35-6, p. 8, Stevens Depo.) However, he later states during cross examination that Brown was going to recommend Causey for termination and that only the Board of Trustees can make the actual termination

decision. (*Id.* at 13.) Likewise, Causey asserts that Brown told her she was going to be terminated if she did not choose to retire. (DE #35-4, p. 7, Causey Depo.) Several sentences later in her own deposition testimony, however, she states that Brown told her she was going to be *recommended* for termination. (*Id.*) The testimony is inconsistent from all parties regarding this issue.

If one believes Causey's assertion that she was told by Brown she was definitively going to be fired if she did not retire, the Court agrees with Causey that this situation is similar to the scenario outlined in *EEOC v. Univ. of Chicago Hosps.*, 276 F.3d 326, 332-33 (7th Cir. 2002 ) (an employee arrived at work only to find that her office had been turned into a storage area, her belongings had been packed up, and her services were no longer wanted). In that instance, the writing was on the wall for the employee when she showed up to work. The same is true if a reasonable employee in Causey's situation would have believed she was going to be terminated by Brown immediately following the meeting and that her only other option was to retire. On the other hand, if one believes Brown's assertion that she told Causey she was going to be *recommended* for termination, then the Court agrees the situation is more like *Cigan v. Chippewa Falls School Dist.*, 388 F.3d 331, 334 (7th Cir. 2004) (no finding of constructive discharge where the employee chose to resign after being told that the superintendent was going to recommend her contract not be renewed the following

year).  Because Causey has presented conflicting deposition testimony regarding Brown's statements during the May 11th meeting, this is ultimately a question of fact for the jury.  As such, Causey has met the minimal burden of demonstrating an adverse employment action necessary to establish this step of her *prima facie* case at the summary judgment stage.


<u>Similarly Situated Employee</u>

Defendants argue that Causey has offered no similarly situated employee outside of the protected classes (race, sex, or age) who was treated more favorably, and, therefore, she has not met the fourth element of the *prima facie* case of proving discrimination. Under the traditional indirect analysis, a plaintiff must provide evidence that a similarly situated employee who is "directly comparable to [the plaintiff] in all material respects" was treated more favorably.  *Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008).  The inquiry is not a rigid one, and it asks "only whether the 'members of the comparison group are sufficiently comparable to [the plaintiff] to suggest that [the plaintiff] was singled out for worse treatment.'"  *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007) (citing *Crawford v. Indiana Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006)).

Causey has not attempted to describe any similarly situated

employee at all, nor does she argue that she was the only employee that held such a position within the FWCS system. Thus, she fails to meet her burden of proving a *prima facie* case of discrimination under the traditional indirect analysis.

Instead, Causey simply asserts that the fact Defendants sought to find a younger male to perform the job after she was no longer employed at FWCS raises an inference of discrimination. In support of her argument, Causey cites language from various Seventh Circuit cases. Most of the cases she references are not on point. For example, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000), dealt with a "mini" reduction in force situation in which the employee's duties were absorbed by the other employees not within the protected class. This issue is not applicable to the case at hand. Causey also cites *Barricks v. Eli Lilly & Co.*, 481 F.3d 556 (7th Cir. 2007). In *Eli Lilly*, the Court held that the "similarly situated test is a flexible, commonsense inquiry whose requirements vary from case to case." *Id*. at 560. The court went on to say, however, that, "[i]ts purpose is to determine whether there are enough common factors between a plaintiff and a comparator – and few enough confounding ones – to allow for a meaningful comparison in order to divine whether discrimination was at play." *Id*. Causey has provided no comparative factors

whatsoever.[8] Causey also cites *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996), for the proposition that finding a replacement of another race, sex, or age, raises an inference of discrimination. However, Causey fails to note the court concluded that, while such a replacement may raise an inference of discrimination, "it is neither a sufficient nor a necessary condition." *Id*.

While the cases cited by Causey are not directly applicable to her assertion that she need only show that Defendants filled her position after she was terminated, the Court takes note of *Pantoja v. American NTN Bearing Manufacturing Corp.*, 495 F.3d 840 (7th Cir. 2007). In *Pantoja*, the court analyzed the origins of the "similarly situated" prong of the *McDonnell Douglas* test. The court cautioned against an unduly rigid approach and concluded that:

> Once an employee can show (in the sense of raising an issue of material fact at the summary judgment stage) that he is meeting his employer's legitimate expectations (the second element), then the fact that the employer needs to find another person to perform that job after the employee is gone raises the same inference of discrimination that the continuation of a search does in the hiring situation.

---

[8] In *Eli Lilly*, the court concluded the plaintiff's claim of age discrimination failed because she made no attempt to point to a younger employee who was similarly situated and who received better treatment. *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007).

*Id.* at 846. However, nearly two months after the *Pantoja* decision, the Seventh Circuit narrowed the application set forth in *Pantoja* to situations in which a plaintiff argues that the employer's expectations were specifically tailored and disparately applied because of the plaintiff's race (sex, or age). *See Henry v. Jones*, 507 F.3d 558, 565-66 (7th Cir. 2007) ("In *Pantoja*, rather than contending that he was meeting his employer's legitimate expectations, the plaintiff maintained that he was subject to particularly strict employment standards because of his race."). In *Henry*, the court concluded that the plaintiff did not demonstrate a *prima facie* case of discrimination because he did not offer evidence of any similarly situated employees as is required under the traditional application of *McDonnell Douglas*, nor did he present evidence sufficient to support a finding that his employer had tailored its expectations to race as is required under the modified analysis set forth in *Pantoja*. *Id.* at 566. *See also Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641-42 (7th Cir. 2008) (plaintiff failed to prove age discrimination because, among other reasons, she did not point to any similarly situated younger employees who were not disciplined and terminated); *Duncan v. Fleetwood Motor Homes of Indiana*, Inc., 518 F.3d 486, 491 (7th Cir. 2008) (court applied *Pantoja* framework in age discrimination claim where the job descriptions applied to plaintiffs were not accurate and the expectations of the employer were not legitimate); *Peirick*

*v. Indiana Univ.-Purdue University Indianapolis Athletics Dep't*, 510 F.3d 681, 687, n. 2 (7th Cir. 2007) (court applied traditional "similarly situated" analysis in gender discrimination claim but recognized that, under certain specific circumstances, a plaintiff may satisfy the fourth prong of the *McDonnell Douglas* framework by showing the employer sought a replacement).

As stated above, Causey has not met the traditional test of showing a similarly situated employee who was treated more favorably, as she has not identified any similarly situated employees at all. Nor has she met the modified analysis set forth in *Pantoja*, as she has not shown that Defendants' legitimate business expectations were disparately applied to her because of her race, sex, or age. Rather, she simply asserts that she was meeting her employer's business expectations because she was performing her job adequately as evidenced by her own deposition testimony and her past positive performance evaluations from a previous supervisor. Causey states that because she was replaced by a younger, black male after her retirement, an inference is raised that it was not her performance which warranted termination but rather that it was simply discrimination on the part of Defendants. The Court finds no such inference, and these assertions do not satisfy the analysis set forth in *Pantoja.* As such, Causey fails to present evidence sufficient to satisfy the fourth prong of the *McDonnell Douglas* analysis, and her claims must

fail.


<u>Pretext</u>

Even if Causey had established a *prima facie* case of discrimination, she fails to show that the reasons given for the employment action taken by Defendants were pretextual. "A pretext . . . is a deliberate falsehood." *Adelman-Reyes v. St. Xavier Univ.*, 500 F.3d 662, 666 (7th Cir. 2007); *see also Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) ("Pretext is more than a mistake on the part of the employer; it is a phony excuse."). To show pretext, a plaintiff must establish that the legitimate reasons offered by her employer were not its true reasons but rather a pretext for discrimination. *Adelman-Reyes*, 500 F.3d at 666. "Showing pretext requires '[p]roof that the defendant's explanation is unworthy of credence.'" *Filar v. Bd. of Educ. of City of Chi.*, 526 F.3d 1054, 1063 (7th Cir. 2008) (*quoting Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000)).

To establish such pretext, a plaintiff must show that the employer's nondiscriminatory reason was dishonest and that the true reason was based on discriminatory intent. *Brown v. Ill. Dep't of Natural Res.*, 499 F.3d 675, 683 (7th Cir. 2007) (*quoting Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007)). This can be done

with either direct or indirect evidence.  If the plaintiff chooses to proceed through indirect evidence, she "must show that the employer's reason is not credible or that the reason is factually baseless."  *Id.* (*quoting Perez*, 488 F.3d at 777-78).  In addition, the plaintiff must also provide evidence of at least an inference that the real reason behind the employment action was discriminatory.  *Id*.

Courts do not concern themselves with the wisdom or correctness of an employer's decision; instead they examine the honesty with which the belief is held.  *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006).  An employee's disagreement with her employer's assessment of her job performance does not mean that the employer's belief was insincere.  *See Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1056 (7th Cir. 2006).  Furthermore, "[a]n employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability."  *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992) (*citing Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464-65 (7th Cir. 1986)); *see also Williams v. Williams Elecs., Inc.*, 856 F.2d 920, 924 (7th Cir. 1988)("[employee's] own self-interested assertions concerning her abilities are not in themselves sufficient to raise a genuine issue of material fact.").  "Such statements may create a material dispute about the employee's ability but do nothing to create a

dispute about the employer's honesty-do nothing, in other words, to establish that the proffered reason is a pretext for discrimination." *Gustovich*, 972 F.2d at 848 (*citing Benzies v. Ill. Dep't of Mental Health*, 810 F.2d 146, 148 (7th Cir. 1987).

Here, Defendants contend that they have offered legitimate non-discriminatory reasons for the employment action taken against Causey. Specifically, Defendants assert that Causey was attempting to undermine Stevens' authority, that she was insubordinate, that she was performing poorly, and that she had an inappropriate demeanor with students and parents. Defendants point to several pieces of evidence to demonstrate such conduct.

First, Defendants assert Causey was urging parents to "call downtown" to the Area Administrator's Office to complain about Stevens, which shows evidence of insubordination.[9] For example, shortly after Stevens took over as principal, various independent parental complaints were received by Bickel's office and logged by the administrative assistant. (DE #31-6, pp. 3-5, Exhs. B-D.) In one instance, the grandmother of a student called Bickel's office and claimed that Causey had contacted her and said, "[L]isten to Mr. Stevens screaming at Brandy. You've got to do something. He's picking on your granddaughter." (DE #31-6, p. 3, Exh. B.) In

---

[9] Bickel, the Area Administrator for FWCS, has provided an affidavit stating that the reports were logged by his assistant and that they were contemporaneously generated in the regular course of business activity, by a person with knowledge. (DE #31-3, p. 2, Bickel Aff.)

another instance, the mother of a student called Bickel's office to complain about numerous run-ins with Stevens. Specifically, the mother was concerned about the suspension of her daughter, and she stated that an office worker at Miami suggested she view the videotapes in connection with the suspension because of some discrepancies. (DE #31-6, p. 4, Exh. C.) When the administrative assistant called the mother back and asked her what office worker had suggested that particular course of action, the mother named Causey. (*Id.*) However, the mother did deny it was Causey who had suggested Stevens was prejudiced. (*Id.*) Finally, the mother of another student claimed that she was "on the phone" with Causey when she heard Stevens in the background "talking to the kids like an Army sergeant." (DE #31-6, p. 5, Exh. D.)

In her Response, Causey does not deny that several parents called the Area Administrator's Office and referenced her in connection to those calls. She presents no evidence to the contrary. Instead, she admits that, according to these records, some of the parents stated Causey had provided them with information pertaining to Stevens' negative treatment of their children. However, she simply asserts that not *all* of the parental complaints specifically named Causey as the individual who had relayed the information. (DE #35-2, p. 5.)

Indeed, Defendants have presented additional information that, around the same time as these calls, other incidents occurred

regarding "office staff" contacting parents about school issues. In one such case, Stevens had broken up a fight and was talking to the student and the police about the incident, when the student's parent arrived at the school to see what was going on. (DE #31-4, p. 2, Stevens Aff.) When questioned about the unexpected appearance, the parent indicated that "someone" at the office contacted him regarding the incident. (*Id.*) Whomever called this parent specifically violated school policy at Miami which dictates that parents are not to be contacted until a situation is resolved. (*Id.* at p. 1.) The policy is in place because involving a parent prior to a resolution could disrupt the school or jeopardize an investigation of the incident. (*Id.*) Causey denies she called the boy's parent. However, the Court finds that Defendants' *belief* she had done so was reasonable based on the timing of the event and the previous parental calls attributing similar action to Causey. Causey has presented no credible evidence to contradict the fact that Defendants honestly believed Causey was involved in those situations. *See Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1013 (7th Cir. 2004) ("[T]he more objectively reasonable a belief is, the more likely it will seem that the belief was honestly held.")

Defendants have also presented evidence of a written reprimand and a written verbal warning issued to Causey by Thomas Smith, the former principal of FWCS, regarding previous issues of

insubordination.  (DE #31-7, pp. 5-11.)  The written reprimand dated December 16, 1999, described an incident involving a parental call to the school after the cafeteria had allegedly run out of food.  (DE #31-7, p. 5.)  After investigation, it was discovered that Causey advised some students to "tell your mama to call down town and tell them." (*Id*.)  When the students asked if they could use the phone to call home, Causey said "you can only you the phone to call home of you are sick."  She then winked and smiled at them before telling them to go ahead and call.  (*Id*.)  That same reprimand also indicated that Causey had been previously "warned a number of times not to advise students and parents to call outside of our building to resolve problems." (*Id*. at 6.)  Finally, the reprimand stated that this was "a violation of repeated warnings and insubordination" and that "[t]his and other issues previously discussed should not be repeated." (*Id*.)  Causey was also issued a written verbal warning on December 21, 1999, which described ways to improve her dealings with parents, students, and staff.  (DE #31-7, p. 7.)  Specifically, Causey was warned regarding her "attitude and comments [to parents] to seek further assistance from the area administrator's office." (*Id*.)  It was reiterated that the "goal is to resolve problems within our building." (*Id*.)  The warning also stated that it had again been reported to Smith that Causey had been making comments to students regarding her advice to have their parents "call downtown." (*Id*. at 8.)

In response, Causey correctly points out that she had a subsequent positive performance evaluation from Smith in 2001, followed by four positive evaluations between 2002 and 2005 from Janice Craig, the principal after Smith but before Stevens. (DE #35-10, pp. 7-11.) These past evaluations, without more, are insufficient to create a triable issue of fact. *See Moser v. Indiana Dep't of Corrections*, 406 F.3d 895, 901 (7th Cir. 2005) (holding that prior positive evaluations by themselves did not demonstrate that the employee was performing adequately at the time of her adverse employment action).

In addition to the pattern of Causey's unauthorized interaction with parents that Defendants have presented, they have also introduced evidence from Brown's investigation in the form of typewritten notes taken while interviewing the staff at Miami. Brown declares in her affidavit that the notes accurately reflect the statements made by the persons referenced therein. (DE #31-5, p. 3, Brown Aff.)[10] While Causey denies various aspects of the comments made by her fellow employees, she does not suggest, nor is it reasonable to infer from the evidence presented, that Brown's notes are inaccurate or falsified. Causey has presented no

---

[10] While not argued or mentioned by Causey, the Court notes that the notes are not offered for the truth of the matter asserted; rather, they are offered to show that the statements were made by the employees and that Defendants honestly believed and relied on them while making their decision. *See Stewart v. Henderson*, 207 F.3d 374, 377 (7th Cir. 2000); *Wolff v. Brown*, 128 F.3d 682, 685 (8th Cir. 1997).

evidence that would cast doubt on the accuracy of the reports as assembled by Brown.

Brown interviewed eight employees, and the notes from those interviews document perceived issues regarding Causey from the perspective of her fellow employees. For example, the notes from an interview with Doris McElroy indicate that Causey told her she thinks Stevens is racist, that she is always "documenting," and that she does a lot of yelling at the kids. (DE #31-6, p. 7.) Paula Baluvelt's interview notes describe how Causey rolled her eyes when Stevens said things to her, how she saw Causey go to a conference room located next to Stevens' office and pick up the phone when Stevens was yelling at a student nearby, and how, when calling parents, her mannerisms were rude and condescending. (*Id*. at pp. 8-9.) The interview notes pertaining to Donna Lobdell indicate she told Brown that Causey has issues with race and with working on the computer. (*Id*. at p. 10.) Glenda Hayworth's interview notes describe how Causey would complain to Hayworth about Stevens and that Causey told her Stevens was racist. (*Id*. at p. 11.) The notes from the interview with Margaret Katter, the interim principal prior to Stevens, describe a situation involving Causey's interaction with a new student and allegations of racism made towards Katter. (*Id*. at p. 12.) The notes related to assistant principal Kathryn Donnell indicate that, after Stevens had broken up a fight between two students, Causey told her that

"black parents are not going to like a white man [Stevens] pushing the kids around." (DE #31-7, p. 1.) Finally, the notes pertaining to Vicki Brouwer, a conflict mediator, indicate that there is a "toxicity" with how Causey relates to the students. (*Id.*)

As stated above, Causey simply disputes the allegations against her through her own deposition testimony, and she offers no evidence to refute the findings or to suggest that the notes were falsified in any way. In light of the fact that numerous fellow employees described similar issues pertaining to Causey's performance and conduct, the Court finds it objectively reasonable for Defendants to have honestly relied on this information when making their employment decision. Causey presents no evidence to suggest, nor is it reasonable to infer, that Defendants did not do so. When asked directly whether she had any evidence that Defendants did not honestly believe the other side of the story versus hers, Causey responded that she did not. (DE #31-8, p. 11.) Causey's subjective belief regarding the discrimination against her is immaterial and does not prove that Defendants' actions were based in any way on a discriminatory animus. *See Horwitz v. Bd. of Edu. Of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 615-16 (7th Cir. 2001) ("[Plaintiff's] subjective belief that the [defendant's] actions were retaliatory and that [defendant's] claimed reasons for terminating her are pretextual in nature does not create a genuine issue of material fact."); *Fairchild v. Forma Scientific, Inc.*, 147

36

F.3d 567, 574 (7th Cir. 1998) ("subjective beliefs of the plaintiff
. . . are insufficient to create a genuine issue of material
fact.")

It is clear that Defendants have presented evidence of
legitimate, non-discriminatory reasons for Causey's termination.
They have provided independent parental call logs attributing
inappropriate conduct to Causey, prior related disciplinary notices
charging Causey with strikingly similar behavior, and notes from
interviews with Causey's fellow employees establishing
corroborative evidence of her work performance and insubordinate
attitude towards Stevens. This evidence was submitted from both
inside and outside of the school system. Causey does not argue
that it was objectively unreasonable for Defendants to reply on
such information when making their employment decision, nor does
she specifically address the evidence against her. Rather, Causey
simply asserts that she was performing her job well at the time of
her resignation and attaches some past performance evaluations.
The scant evidence Causey has presented is insufficient to create
a material issue of fact regarding this issue, and, as stated in
the *prima facie* section above, Causey's self-serving denials do
nothing at this stage of the analysis to create an inference that
Defendants' proffered reasons for her termination were a pretext
for discrimination.

Instead, Causey suggests that an "after-the-fact" defense is

pretextual and that, when an employer takes such action, it runs the risk of disbelief that is translated into a reasonable inference of pretext. In support of this proposition, Causey argues that Defendants have presented shifting reasons with regard to Causey's termination, conflicting stories as to who was the ultimate decision-maker, and inconsistent testimony regarding the initiation of the investigation. Causey also suggests that an inference of pretext is established because Defendants deviated from their normal procedures when dealing with Causey and because they relied on old performance evaluations to make their employment decision. For the reasons set forth below, the Court finds no inference of pretext based on the evidence presented and further finds that any inconsistencies in testimony are not material to the issue at hand.

First, Causey stresses that she has presented evidence of Defendants' shifting stories with respect to the termination of her employment. Therefore, she argues the Court should find an inference of pretext. Causey is correct in noting that the Seventh Circuit has held an inference of pretext is created when defendants present one reason for terminating an employee at an administrative proceeding and a different reason during the course of litigation. *See Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 676 (7th Cir. 2003) (defendants initially claimed plaintiff was not re-hired because of a policy regarding layoffs; when they later

claimed plaintiff was not re-hired because he was not referred by the union, the court found the latter argument unworthy of credence); *O'Neil v. City of New Albany*, 293 F.3d 998, 1005-06 (7th Cir. 2002) (defendants initially asserted plaintiff did not get hired because he failed to pass a medical examination; when they later claimed he was not hired because he was over the maximum hiring age, the court found the latter argument to be pretextual); *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 634 (7th Cir. 1996) ("If at the time of the adverse employment decision the decision-maker gave one reason, but at the time of the trial gave a different reason which was unsupported by the documentary evidence the jury could reasonably conclude that the new reason was a pretextual after-the-fact justification.") (*citing Perfetti v. First Nat. Bank of Chicago*, 950 F.2d 449, 456 (7th Cir. 1991)).

Here, however, Causey does not present any evidence that Defendants' *reasons* behind the employment decision have ever wavered. Causey simply claims that, at the administrative phase of the matter, Defendants denied Causey was terminated or forced to resign in lieu of termination and, thus, a reasonable inference of pretext is created. Causey asserts Defendants initially claimed Causey's decision to retire had nothing to do with her having been told she was going to be recommended for termination, and she claims that Brown's deposition testimony is inconsistent with that position. She points to a letter from William Sweet, General

Counsel to FWCS, as evidence of those shifting positions. In that letter, Sweet stated:

> As part of its investigation, [Causey] was called before the Employee Relations Manager, Brenda Brown, to discuss the allegations of the complaint from her principal and get her side of the story. In the course of that, [Causey] continually denied that she'd ever received prior discipline. When confronted with the documentation of the prior discipline, indicating that what she had said was not true, [Causey] decided to retire . . . . She was not forced to retire, but decided on her own to do that when confronted with her own false statements.

(DE #35 p. 11) (quoting DE #35-10 p. 4-5, Exhibit 22). However, as Defendants correctly point out, the reason given for the employment decision did not change but rather remained consistent throughout the proceedings. In fact, Sweet's letter specifically states:

> The investigation . . . found numerous incidences not only of [Causey] falsely accusing administrators of behaving in a racially offensive manner, but also uncovered incidences of her own abuse of students, and a consistent pattern of not doing her job by calling parents rather than dealing with an issue. The investigation also disclosed that she had received prior reprimands for similar conduct under other principals . . . ."

(DE #35-10 p. 4.) In the administrative stage of the proceeding, their Motion for Summary Judgment, their interrogatory answers, and their deposition testimony, Defendants have repeatedly asserted that Causey was terminated because of substantial evidence of her insubordination towards Stevens, her poor attitude, and her

dealings with parents and students. Brown's deposition testimony and the documents from her investigation are clearly consistent with that reason. The reasons given for the employment action taken against Causey have remained consistent throughout the entire proceedings, and the Court finds no evidence of pretext. Furthermore, Defendants have repeatedly stated that Causey voluntarily chose to retire rather than choosing the option of termination. Although whether Causey retired voluntarily or was constructively discharged is disputed, Defendants' position has not changed. Neither the letter from Sweet nor Brown's deposition testimony imply that the choice to retire was not given as an alternative to a recommendation for termination. Defendants simply claim that she voluntarily chose retirement and was not forced to do so. The Court agrees with Defendants that there is no inconsistency between this letter and Brown's testimony or the overall reasons given for Defendants' employment action.

Next, Causey claims that Brown and Stevens provided inconsistent deposition testimony with regard to the timing of the employment decision, and, therefore, Defendants' alleged dishonesty is affirmative evidence of guilt. Specifically, Causey claims that Stevens testified the decision to terminate Causey was made before the May 11th meeting, while Brown testified that the decision to recommend termination was not made until after Causey had a chance to present her side of the story at the May 11th meeting. Stevens

did testify that Brown told him the purpose of the meeting was to notify Causey of the termination of her employment; however, he later clarified that Brown told him that she was "going to do a termination for Miss Causey" and that it was a recommendation which would go through the regular process required by the board of trustees. (DE #35-6 pp. 8 & 13, Stevens Depo.) A close reading of the deposition testimony in question establishes that, while recommendation of termination was likely prior to the May 11th meeting based on the results of Brown's investigation, the undisputed fact is that Brown listened to Causey's version of events during the meeting. Brown testified that she would have been open to reconsider her recommendation if Causey gave her some valid reason to do so. (DE #35-5, p. 6, Brown Depo.) However, nothing Causey said during the meeting changed Brown's mind, and she decided to proceed with the termination process. Even if the testimony from Brown and Stevens is inconsistent regarding the particular timing of the decision, this, standing alone, does not cast doubt on Defendants' reasons for Causey's termination, and the Court does not infer evidence of pretext from this testimony.

Next, Causey argues that Defendants have presented conflicting stories as to who the decision-maker was with respect to the termination of her employment. The Court agrees with Defendants that Causey's assertion mischaracterizes the evidence. Defendants have presented affidavits and testimony stating Brown made the

decision to recommend termination for Causey. The fact Brown testified that Stevens wanted Causey to be terminated does not create an inconsistency in testimony. (DE #35-5, p. 6.)

Causey also argues that there are discrepancies with respect to the initiation of the investigation. In addition to being immaterial to the matter at hand, the Court agrees with Defendants that Causey's assertions mischaracterize the evidence. During her deposition, Brown testified that she received parental call logs from the Area Administrator's Office that led to the initiation of the investigation, and she also indicated that she received a phone call from Stevens stating that he had serious concerns with Causey contacting the students' parents. (DE #35-5, p. 2.) In her "Statement of Material Facts Not in Dispute," Causey admits that Bickel initiated a meeting with Stevens and Brown regarding the parental complaints, and she also admits that Bickel asked Stevens to put together a statement regarding the complaints. (DE #35-2, p. 5.) While the letter from Defendants to the EEOC referenced a complaint from Stevens(DE #35-10, p. 4), it is undisputed that the parental complaints are at the center of the investigation initiation. The Court does not find that a genuine issue of material fact exits as to this matter, nor does the Court find evidence of pretext.

Next, Causey claims that evidence of pretext exists because Brown did not follow FWCS's normal procedures with respect to the

termination of Causey. The Court agrees with Defendants that Causey offers no evidence of exactly what processes she is referring to and how they were departed from. The fact that Brown explained the implications of retiring versus termination to Causey does not suggest pretext existed, nor does the fact that Causey was never advised of her right to challenge her termination through a grievance procedure or due process appeal. It is undisputed that Causey was previously given a copy of the FWCS employee handbook in which such procedures are described.

Finally, Causey argues that pretext is shown by Defendants "reliance" on the prior disciplinary actions and evaluations that Causey received at the hands of Smith. Causey fails to acknowledge that Defendants have consistently claimed Causey was recommended for termination based on evidence that Causey was undermining the authority of Stevens, that she was insubordinate, that she was performing poorly, and that she had an inappropriate demeanor with students and parents. This evidence was uncovered during Brown's recent investigation. The fact that Defendants also point to similar past conduct from a different principal does not create an inference of pretext.

Overall, evaluating all of Causey's arguments in light of the evidence submitted from both sides, this Court finds no evidence of pretext. Also, the Court finds that Causey has not met her burden of producing specific evidence to call into question the honesty of

Defendants' beliefs regarding their proffered nondiscriminatory reasons for ending Causey's employment. Thus, summary judgment is granted as to Causey's discrimination claims.


Retaliation Claims

Causey states that she has established her claim of retaliation using the direct method of proof. To prove retaliation under the direct method, a plaintiff must present evidence that: (1) she engaged in a statutorily protected activity; (2) she was subjected to an adverse employment action by the defendant; and (3) a causal connection existed between the two events. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008). Two types of evidence can be relied on when attempting to show that the protected activity motivated the defendant's action: direct evidence and circumstantial evidence. *See Lewis v. School Dist. #70*, 523 F.3d 730, 742 (7th Cir. 2008). Direct evidence usually involves an admission by the decision maker regarding his intent to retaliate. *Id*. Here, Causey admits that no such direct evidence was uncovered, and she therefore she must rely on convincing circumstantial evidence to prove her claim.

"[C]ircumstantial evidence requires a longer chain of inferences, but if each link is solid, the evidence may be compelling. . . ." *Sylvester v. SOS Children's Villages Ill., Inc.*, 453 F.3d 900, 903 (7th Cir. 2006). This evidence can

include: (1) suspicious timing, ambiguous statements, or behavior towards other employees; (2) evidence of unfavorable treatment compared to similarly situated employees; or (3) evidence that the employee did not deserve the termination and that the employer's reason for termination is a pretext for the retaliation. *Volovsek v. Wisc. Dep't Agric., Trade & Consumer Protection*, 344 F.3d 680, 689-90 (7th Cir. 2003).

Here, Causey engaged in a protected activity when she filed a complaint with the NAACP that the Defendants were discriminating against her. However, even assuming that she was subjected to an adverse employment action, her claim still fails because she has not established that a causal connection existed between the two events. Causey's main argument for a causal connection centers around suspicious timing.[11] She claims that she was terminated not more than nine days following the submission of her complaint of discrimination to the NAACP. She alleges that the Defendants received word of her complaint from the NAACP on or around May 2, 2006, and that she was constructively discharged on May 11, 2006. She argues that because her termination followed so closely on the heels of her complaint, an improper motive was established and a causal connection existed between the protected activity and the

---

[11] Causey also argues that the circumstantial evidence she has presented regarding her claims of pretext also apply to her retaliation claims; however, as discussed above, the Court has found that no evidence of pretext exists, and these arguments similarly fail with regard to her retaliation claims.

adverse employment decision.

The Court finds no such causal connection. As Defendants correctly point out, "timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." *Springer v. Durflinger*, 518 F.3d 479, 485 (7th Cir. 2008). Also, Causey admits that she was suspended on April 27, 2006. The Defendants began their formal investigation into her alleged insubordination at that time. Therefore, Causey was suspended pending the results of the investigation *prior* to the date Defendants received word from the NAACP that Causey had filed a complaint against them. As such, the Court agrees with Defendants that the normal reasons for considering temporal proximity as a proxy for causation need not be given an extraordinary amount of weight here.

Furthermore, Causey admitted during her deposition that she had a feeling the "retaliation" began on April 18, 2006, when she signed her intent to return to school the following year. When asked whether she had evidence to support her claim of retaliation, she replied that it was "just my suspicion. That's what I feel." (DE #31-8 p. 20-21, Causey Depo.) Causey's subjective belief regarding the retaliation against her is immaterial and does not prove that Defendants' actions were based on a prohibited motive. *See Horwitz v. Bd. of Educ. Of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 615-16 (7th Cir. 2001) ("[Plaintiff's] subjective belief that

the [defendant's] actions were retaliatory and that [defendant's] claimed reasons for terminating her are pretextual in nature does not create a genuine issue of material fact."); *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 574 (7th Cir. 1998) ("subjective beliefs of the plaintiff . . . are insufficient to create a genuine issue of material fact.")

The circumstantial evidence that Causey points to in an effort to prove her retaliation claim under the direct method does not support an inference of a retaliatory motive or create a convincing mosaic of retaliation. Taken as a whole, the circumstantial evidence is far too speculative to amount to a triable issue; thus, summary judgment is appropriate at this juncture.

Additional Claims

Finally, Causey argues that she has presented sufficient evidence to hold FWCS liable pursuant to Section 1983 for violating her rights as guaranteed by the Fourteenth Amendment. The standard for analyzing claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 is the same as the standard for analyzing Title VII claims. *See Lalvani v. Cook County, Ill.*, 269 F.3d 785, 788-89 (7th Cir. 2001); *see also Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 751 n.2 ("The only difference between a claim under Title VII and a claim under § 1983 is who can be named as a defendant in the action.")

As described above, Causey has not established valid claims of race, sex, or age discrimination under Title VII against any of the Defendants, nor has she established claims under 42 U.S.C. § 1981 or 42 U.S.C. § 1983.

Furthermore, under section 1983, a municipality can only be liable for acts taken pursuant to its official policy, statement, ordinance, regulation or decision, or those taken pursuant to a municipal custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). "A local government unit's unconstitutional policy or custom can be shown by: (1) an express policy causing the loss when enforced; (2) a widespread practice constituting a 'custom or usage' causing the loss; or (3) a person with final policymaking authority causing the loss." *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008) (*citing Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008)).

Causey has not shown a constitutional violation based on a policy or custom of FWCS. Furthermore, she has not established that Bickel, Brown, or Stevens were persons with final policymaking authority. In fact, the FWCS Classified Employee Policy Booklet states that "[e]mployment may be terminated *by the Board of School Trustees* at any time for good and just cause." (DE #31-6, p. 1) (emphasis added). The next section of the Booklet outlines a grievance procedure describing the manner in which an employee can ultimately bring an alleged violation before the Board of School

Trustees. (*Id*. at pp. 1-2.) While she argues that Brown told her she was going to be terminated if she did not resign and that Stevens indicated in his deposition that Brown was going to terminate her, Causey has presented no evidence to suggest that the policy described above allocating the final policymaking authority to the Board of School Trustees is incorrect. As such, Causey's claims must fail.


CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment (DE #31) is **GRANTED**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's claims against all Defendants. The Clerk is **FURTHER ORDERED** to close this case.


**DATED: June 4, 2009**                    **/s/RUDY LOZANO, Judge**
                                           **United States District Court**